FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
## Southern Division

99 DEC 15  AM 10: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| TAMIKA JONES UNDERWOOD, | ) | |
| Plaintiff, | ) | |
|  | ) | CIVIL ACTION |
| vs. | ) | FILE NO. CV-97-P-2026-W |
| DCH HEALTHCARE AUTHORITY, | ) | |
| Defendant. | ) | |

ENTERED
DEC 15 1999

## **OPINION**

The defendant, DCH Healthcare Authority, filed a motion for summary judgment on May 20, 1998, that was considered at the August 27, 1998 motion docket. During oral argument on defendant's motion at the motion docket, plaintiff requested that she be allowed to amend her complaint to set forth an additional charge of retaliation. On October 21, 1998, this court entered an order allowing plaintiff to make a third amendment to her complaint to add the retaliation claim.[1] The court then granted defendant's motion to amend the scheduling order extending the deadline for filing dispositive motions to allow defendant time to file a motion for summary judgment on

---

[1] Plaintiff refers to this third amended complaint as the "second amended complaint." Prior to this third request, plaintiff amended her complaint on December 15, 1998, and on May 25, 1998. This third amendment will hereafter be referred to as the "second amended complaint."



plaintiff's new retaliation claim. Defendant filed a motion for summary judgement on plaintiff's second amended complaint on January 8, 1999. For the reasons expressed below, both motions are due to be granted.

## Facts

Plaintiff, Tamika Jones, a black female, was hired by DCH Northport Hospital as a Nursing Assistant on March 7, 1994. At the time plaintiff received this job, she held an Associate Degree in Respiratory Care Technology from Wallace State College that she received in December of 1993 but had never worked in a respiratory therapy position following receipt of this degree. On May 5, 1994, plaintiff requested a transfer to the Respiratory Therapy Department. The plaintiff's application was denied, and plaintiff never complained to anyone about the non-selection. Plaintiff again requested a transfer to the Respiratory Therapy Department on October 29, 1994. Plaintiff did not receive the transfer despite being recommended by the clinical coordinator, Mike Tidmore, after her interview with him. After this second denial, plaintiff spoke with Wendell Briggs, CEO of Northport Hospital, and informed him of her dual rejections.

On March 28, 1995, plaintiff again applied for a transfer to the Respiratory Therapy Department and was once again interviewed by Mike Tidmore, who recommended her for hire despite his concern about her experience. Plaintiff was awarded the Graduate Respiratory Therapy Technician ("GRTT") position on a per diem, or "as needed," basis effective April 30, 1995. The Respiratory Department Manager was Paul Abel, and her supervisor was Mike Tidmore.

During plaintiff's tenure as a GRTT, her supervisor, Mike Tidmore, noted to plaintiff several areas of concern with her performance. In addition, two physicians, in early 1996, noted concerns about plaintiff's experience and ability to perform as a GRTT. These notes of concern involved a misidentification of a blood gas sample and plaintiff's attitude once encountered with the mistake.

Mr. Abel was confronted with these concerns by the Medical Director of the Cardio-Pulmonary Department. As part of Mr. Abel's investigation into plaintiff's performance, he questioned plaintiff's shift partner, Renee Clodfelter. Ms. Clodfelter indicated that she had observed several problems with plaintiff's performance, including a lack of basic respiratory knowledge. Based on his investigation, Mr. Abel felt that plaintiff's performance problems were largely due to her extended duration from the receiving of her degree and her commencing work as a GRTT. As such, Mr. Abel transferred plaintiff to an EKG Technician position at the same pay and benefits. This transfer was made in order to provide plaintiff with an opportunity to study and master the skills necessary to achieve proficiency for the performance of respiratory therapy duties. Mr. Abel told plaintiff that she would be placed in the first available Respiratory Therapy Technician position as soon she passed the CRTT board certification exam, although passing the CRTT has never been a requirement for the GRTT position. DCH bought the GRTT study materials for plaintiff, and her EKG position supervisor offered to help her study for the test and to allow her to study while at work and between assignments. Plaintiff understands that passing the board exam is a condition put in place by Mr. Abel because of her performance deficiencies and that she must pass the exam in order to resume the GRTT position. However, plaintiff has not taken or passed the test because she feels it is "unfair." Plaintiff testified that others in her former position have not passed the board exam, but she also testified that she does not know if any physicians have complained about the performance of these individuals. Plaintiff testified that her removal from the GRTT position was based on her race because "the person who replaced [her] was white and not as qualified." However, plaintiff also testified that she has not seen the qualifications of the individuals hired after her.

Subsequent to her removal, plaintiff requested consideration for a vacant Respiratory Therapist Technician position in February 1996. At that time, plaintiff had taken the board

examination only once and had failed. In January 1997, plaintiff again requested being transferred back to the GRTT position, but she had still not passed the board examination. Finally, counsel for plaintiff sent a letter to counsel for DCH on June 15, 1998, requesting that DCH reinstate plaintiff to her former GRTT position. In a letter dated June 25, 1998, counsel for DCH denied plaintiff's request. Plaintiff claims that DCH retaliated against her by not reinstating her into the vacant respiratory position following the filing of her EEOC charge on March 3, 1996. Plaintiff has testified however that she was informed in advance of her filing her EEOC charge that she would be required to pass the board examination prior to moving back to the GRTT position.

## Analysis

1. Plaintiff's Race Discrimination Claim

Plaintiff claims that she has been discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and 42 U.S.C. § 1981, alleging that her removal from the GRTT position was discriminatory and that DCH's failure to reinstate her to that position upon her requests in February 1996 and January 1997 was discriminatory and in retaliation for her complaints. In both her Title VII and Section 1981 claims, plaintiff bears the initial burden of proving a *prima facie* case of employment discrimination under the three-prong McDonnell Douglas test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989). If the plaintiff sets forth a *prima facie* case, then the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. McDonnell Douglas, 114 U.S. at 802; Jones, 874 F.2d at 1538. Once the employer satisfies the "exceedingly light" burden of articulation, the burden shifts again to the plaintiff to show that the reason offered by the employer

is merely a pretext for discrimination. Burdine, 450 U.S. at 256. The employee must prove that the action was taken and that the real reason the action was taken is because of the employee's race. St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at 253). Further, conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext of intentional discrimination where [an employer] has offered . . . evidence of legitimate, nondiscriminatory reasons for its action." Coutu v. Martin County Bd. Of County Comm'rs, 47 F.3d 1068, 1073-74 (11th Cir. 1995).

It is only necessary to address plaintiff's initial burden of establishing her *prima facie* case under the McDonnell three prong test because plaintiff fails to meet this initial burden. In establishing a *prima facie* case, plaintiff must prove that (1) she belongs to a protected group; (2) she was qualified for the position; (3) at the time of transfer or denial of reinstatement, she was performing her job at a level that met DCH's legitimate expectations; and (4) she was replaced by an individual outside the protected class. See, e.g., Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997), cert denied sub nom, Combs v. Meadowcraft Co., 522 U.S. 632 (1998); Coutu, 47 F.3d at 1073.

First, when deciding if a plaintiff has satisfied the qualification prong, the court must look to a plaintiff's performance at the time of the termination, or in this case the removal. Robertson v. Home Depot (U.S.A.), Inc., 976 F. Supp. 1473 (S.D. Fla. 1997) (citing Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332 (7th Cir. 1991)). An employee who does not meet or exceed the legitimate performance standards of his or her supervisor is not qualified to hold the position and cannot establish a *prima facie* case of discrimination necessary to overcome summary judgment. Robertson, 976 F. Supp. 1473 . Additionally, an employer is not required to promote or reinstate an employee who is not qualified for the position sought. Wu v. Thomas, 847 F.2d 1480, 1484 (11th

Cir. 1988). Courts in this circuit have recognized that a person may be considered unqualified for a position if he or she lacks even one qualification necessary for the position. Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988).

In scrutinizing the circumstances that existed at the time of plaintiff's removal, the evidence shows that plaintiff exhibited performance deficiencies sufficient enough to warrant her removal and subsequent reinstatement denials. In fact, there is no direct evidence to indicate that plaintiff was qualified from the outset as Mr. Tidmore did note concerns about her experience when he recommended her. By the time of her removal, she had demonstrated her lack of experience to not only doctors but also supervisors and co-workers. She did not meet the performance standards of Mr. Abel and Mr. Tidmore, and she failed to satisfy Mr. Abel's requirement that she pass the national board exam as a prerequisite to being transferred back to the position. Plaintiff's insistence that passing the CRTT examination has never been a requirement for the GRTT position is outweighed by the fact that Mr. Abel has never received complaints from physicians regarding the performance of any other Respiratory Therapists coupled with plaintiff's performance deficiencies. Plaintiff is fully aware that she will be placed in the first available Respiratory Therapy Technician position as soon as she passes the exam. Plaintiff's failure to meet legitimate performance expectations of supervisors and physicians in her department is a legitimate, non-discriminatory reason for removal from the position. For the foregoing reasons, plaintiff has failed to establish her *prima facie* case, and as such, plaintiff's Title VII and Section 1981 claims fail.

2. Plaintiff's Retaliation Claim

In order to make out a retaliation claim under Title VII, plaintiff must show that: (1) she engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) the

adverse action was casually related to her activities. Coutu v. Martin County Bd. Of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995); EEOC v. Reichhold Chems., Inc., 988 F.2d 598, 600 (11th Cir. 1986). If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action. Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494-95 (11th Cir. 1989). If the employer meets this "exceedingly light" burden, the plaintiff can survive summary judgment only by creating an inference that the employer's non-discriminatory reason is a pretext for discrimination. Coutu, 47 F.3d 1068, 1074 (citing Tipton, 872 F.2d 1491, 1494-95 (11th Cir. 1989)).

As to plaintiff's initial burden, plaintiff's *prima facie* case fails on this third element. No casual connection to support a retaliation claim exists where the employer established the complained-of policy, condition, or practice before the employee engaged in the protected activity. See Salmons v. Dollar General Corp., 989 F. Supp. 730, 738 (D. Md. 1996); Alford v. City of Montgomery, 879 F. Supp. 1143, 1152-52 (M.D. Ala. 1995); Zenni v. Hard Rock Café Int'l, Inc., 903 F. Supp. 644, 655 (S.D.N.Y. 1995); Daniels v. Dalton, 1995 WL 643358, *2 (W.D.N.Y.). Plaintiff has failed to establish that DCH's denial of her reinstatement requests was casually connected to her having filed an EEOC charge in March of 1996 and the current pending lawsuit in August 1997. The same requirement for reinstatement, established before plaintiff engaged in any protected activity, remains in place today, and the fact that plaintiff has yet to meet it does not establish the requisite casual connection between plaintiff's EEOC charge and current lawsuit and DCH's refusal to reinstate her. It is undisputed that plaintiff was fully informed of this prerequisite before she filed both the EEOC charge and this lawsuit. Likewise, it is undisputed that the reason DCH did not reinstate plaintiff upon her attorney's request is that plaintiff has not met yet the prerequisite set forth by her department manager. Thus, plaintiff's retaliation claim fails as a result

of failure to establish the third element of her *prima facie* case. It is therefore not necessary to address to further burdens placed on each party because plaintiff has not met the initial burden.

2. Conclusion

Because the plaintiff has not established a *prima facie* case of race discrimination or retaliation in connection with her removal and subsequent reinstatement denials, the defendant's Motions for Summary Judgment are due to be granted.


Dated: December  14 , 1999.

                                            Senior Judge Sam C. Pointer, Jr.

Service List:
    Gregory O. ~~Williams~~ Wiggins
    Wayne Morse, Jr.
    Kurt A. Powell
    Rosemary Globetti
    R. Brett Adair